**UNITED STATES of America, Appellee,**

**v.**

**Richard Clinton ALLSUP, Appellant.**

No. 77–3237.

United States Court of Appeals,
Ninth Circuit.

April 26, 1978.

Certiorari Denied June 12, 1978.
See 98 S.Ct. 3081.

---

Fredric F. Kay, Asst. Federal Public Defender (argued), Tucson, Ariz., for appellant.

James E. Mueller, Asst. U. S. Atty. (argued), Tucson, Ariz., for appellee.

Before ELY and GOODWIN, Circuit Judges, and ENRIGHT,* District Judge.

ELY, Circuit Judge:

Allsup, a convicted felon, was arrested, pursuant to a federal warrant, in Tucson, Arizona, on October 24, 1976 in connection with two bank robberies. A search of the vehicle in which Allsup was driving at the time of his arrest revealed a quantity of marijuana and a .45 caliber pistol. Allsup was charged by indictment on November 17, 1976 with two counts of bank robbery. He pleaded not guilty; however, before trial, a plea bargain was entered under which Allsup would plead guilty to one count of bank robbery, and the Government would dismiss the other count and attempt to bring about the dismissal of bank robbery charges pending against Allsup in New Mexico and Oklahoma. The Government also represented that if Allsup would plead guilty to the bank robbery count, he would not be prosecuted for possession of marijuana or for the transportation and possession of a gun by a convicted felon. Allsup repu-

diated the plea bargain before a change of plea was entered. He was subsequently tried and convicted on February 3, 1977 of both charges of bank robbery.

On February 9, 1977 Allsup was charged in an indictment with violations of 18 U.S.C. §§ 922(g)(1) and 924(a) (transport of a gun in interstate commerce) and 18 U.S.C. App. § 1202(a)(1) (felon in possession of a firearm).[1] The indictment alleged:

Count I: That on or about October 24, 1976 RICHARD CLINTON ALLSUP, having been convicted on January 9, 1973 in Los Angeles County, California of Armed Robbery and sentenced to a term of imprisonment for from five years to life, did knowingly transport a .45 caliber Llama semi-automatic pistol from Deming, New Mexico to Tucson, Arizona; in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a).

Count II: That on or about October 24, 1976 at or near Tucson, Arizona in the District of Arizona, RICHARD CLINTON ALLSUP, having been convicted on January 9, 1973 in Los Angeles County, California of armed robbery and sentenced to a term of imprisonment for from five years to life, did knowingly possess a .45 caliber Llama semi-automatic pistol; in violation of Title 18 Appendix, United States Code, Section 1202(a)(1).

A trial date of March 22, 1977 was set. Allsup immediately brought a pre-trial motion for dismissal of the indictment based on alleged prosecutorial vindictiveness. He claimed that the Government was prosecuting him on the gun charges solely because he had refused to enter a guilty plea to the earlier bank robbery indictment. His motion was denied.

The trial date was continued several times because Allsup had since been removed to Oklahoma to face bank robbery charges there. The Oklahoma prosecution

* Honorable William B. Enright, United States District Judge for the Southern District of California, sitting by designation.

1. Allsup was also charged in a separate information with misdemeanor possession of marijuana. These charges were filed on February 7, 1977, after his Arizona bank robbery conviction but are not relevant to this appeal. Allsup challenges only the propriety of the firearm charges.

required Allsup to undergo extensive psychiatric examination, including observation at the Government's Springfield, Missouri, facility. Allsup was returned to Arizona after being convicted on the bank robbery charges in Oklahoma. His trial was set for September 14, 1977. On September 12, 1977 a hearing was held on Allsup's pending pre-trial motions. His renewed motion to dismiss the indictment because of prosecutorial vindictiveness was again denied, as was his motion to dismiss for lack of a speedy trial. Allsup had also moved to strike the phrase "convicted of armed robbery and sentenced to a term of imprisonment for from five years to life" from the indictment as being prejudicial and constituting surplusage. This motion was also denied.

At trial on September 14, 1977 Allsup renewed his motion to strike, and the word "armed" was deleted from both counts in the indictment. There was also extended discussion concerning the discrepancy between the actual date of the conviction in Los Angeles (January 24, 1973) and the date specified in the indictment (January 9, 1973). The trial court ruled that Allsup was not prejudiced by the error and denied Allsup's motion to strike any additional portions of the indictment and his motion for mistrial, based on the allegedly ambiguous and prejudicial nature of the indictment. Allsup was found guilty on both counts of the indictment and was sentenced to five years imprisonment on count I and two years imprisonment on count II, the sentences to be served concurrently to each other, but consecutively to any other terms of imprisonment previously imposed.

Allsup now appeals his conviction for the firearm offenses, claiming that the trial court erred in denying his motion to dismiss for prosecutorial vindictiveness and lack of a speedy trial. He also urges that the trial court erred in refusing to strike the allegedly prejudicial language from the indictment and that the trial court improperly instructed the jury on the meaning of reasonable doubt. We reject Allsup's contentions and affirm his conviction.

■ As to the claim of prosecutorial vindictiveness, Allsup contends that the gun charges were filed solely because he refused to plea bargain in his prior Arizona prosecution for bank robbery. We reject the contention, as did the trial judge. In electing not to bring the gun charges initially[2] and utilizing them as a latent bargaining tool, the Government exercised permissible prosecutorial discretion. The Supreme Court has recently indicated that this practice is not constitutionally infirm. In *Bordenkircher v. Hayes,* —— U.S. ——, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the prosecutor explicitly informed the defendant that if he did not plead guilty to the pending charges, the Government would seek another indictment, under which defendant could be sentenced to imprisonment for life. The defendant declined to so plead, and the Government obtained another indictment for a separate and distinct offense. The defendant was convicted under the second indictment and sentenced to life imprisonment. The Supreme Court wrote that "the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment." *Id.,* 98 S.Ct. at 669. Our court has also approved plea bargaining in this manner. In *United States v. Gerard,* 491 F.2d 1300, 1305–06 (9th Cir. 1974), we stated, "[i]f, as part of that process [plea bargaining], a prosecutor may properly indicate the risks in not pleading guilty, whether of a larger sentence or of a larger exposure, . . . we see no reason why

---

**2.** The prosecution alleged, and the trial court found, that the gun charges constituted a separate and distinct offense, being unrelated to the bank robberies. Allsup does not deny that there was justification for instituting the gun charges, nor does the prosecution deny that it was in possession of sufficient information concerning the gun charges at the time of the bank robbery indictment. The prosecution also does not deny that Allsup's refusal to plead guilty to the bank robbery charges induced the firearm indictment.

the state should necessarily be precluded in all respects from actualizing these risks when the plea is withdrawn." *See also United States v. Preciado-Gomez*, 529 F.2d 935, 940 (9th Cir. 1976). The trial court did not err in refusing to grant Allsup's motion to dismiss for prosecutorial vindictiveness.

■ Allsup also claims that his prosecution was not conducted in conformance with the time requirements of the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161–3174. Certain time limitations are prescribed by Section 3161(b) and (c). These limitations are modified for the first three years after the effective date of the Act. Subsection (g) of Section 3161 provides that during the second effective year of the Act (July 1, 1976–June 30, 1977),[3] the trial of a defendant must commence within 120 days from the time the defendant is arraigned on the indictment.[4] Here Allsup was arraigned on the gun charges on February 10, 1977. Trial commenced on September 14, 1977, over 200 days from Allsup's arraignment. There are, however, certain periods which are excluded from the computation of the 120-day period within which trial must commence. Section 3161(h)(1) excludes from the 120-day period "[a]ny period of delay resulting from other proceedings concerning the defendant . . .."[5] Our review of the

record convinces us that the vast majority of the delay between arraignment and trial was caused by the pendency of the bank robbery prosecution in Oklahoma. There Allsup underwent extensive psychiatric testing before being convicted and sentenced in June of 1977. Even after being returned to Arizona to face the pending gun charges, appellant underwent further time-consuming psychiatric evaluation. Accordingly, taking into account the time covered by the exclusions of Section 3161(h), the prosecution did not exceed the limits prescribed by the Speedy Trial Act. Allsup makes no claim that his right to a speedy trial under the Sixth Amendment was violated.

■ We likewise find no merit in Allsup's claim that the trial court improperly instructed the jury on the meaning of reasonable doubt. The instructions were by no means a model of perfection, but considering them in their entirety, as we must, *United States v. Robinson*, 546 F.2d 309, 314 (9th Cir. 1976), we are convinced that the instructions to the jury were not so imperfect as to require reversal. The instruction on reasonable doubt, while unnecessarily repetitious and weighted, must be viewed along with the other instructions, as a whole. So viewing it, we conclude that it,

3. Allsup's arraignment on February 10, 1977 commenced the running of the time permitted under the Speedy Trial Act; hence, the limits applicable to the second year after the effective date of the Act control.

4. We note that no other time provisions of the Speedy Trial Act are involved in this appeal. Allsup did not repudiate the plea bargain until January 28, 1977. The gun charges were filed 12 days thereafter. The prosecution properly could delay seeking an indictment until after the plea bargain was aborted. Nor can we perceive that the time between Allsup's arrest and indictment was excessive, especially in light of the fact that his October arrest was for bank robbery, not illegal possession of a firearm.

5. 18 U.S.C. § 3161(h)(1) provides:
(h) The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—
(A) delay resulting from an examination of the defendant, and hearing on, his mental competency, or physical incapacity;
(B) delay resulting from an examination of the defendant pursuant to section 2902 of title 28, United States Code;
(C) delay resulting from trials with respect to other charges against the defendant;
(D) delay resulting from interlocutory appeals;
(E) delay resulting from hearings on pretrial motions;
(F) delay resulting from proceedings relating to transfer from other districts under the Federal Rules of Criminal Procedure; and
(G) delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement.

together with the other instructions, contained all of the criteria which we have previously indicated in *United States v. Robinson, supra,* to be critical: the concepts of presumed innocence, the government's burden of proof, and the nature of a reasonable doubt.[6] In these circumstances, the trial court did not commit reversible error.

■ Allsup's last contention is that the trial court should have granted his motion to dismiss because the indictment contained prejudicial surplusage and was impermissi-

bly vague and ambiguous. This argument is not persuasive. First, the fact that Allsup had previously been convicted of a felony was an element of the crime with which he was charged, the transportation and possession of a firearm by a convicted felon. The Government was required to allege and prove the conviction as an essential element of its case. We cannot say that the manner in which the prior felony conviction was alleged was unduly inflammatory or prejudicial. Second, the indictment, while slightly erroneous in its recitation of facts, was

---

**6.** The trial court's instruction· on reasonable doubt, in its entirety and in the context of other related instructions, was as follows:

You should weigh all of the evidence in the case, both direct and circumstantial, and after weighing all of the evidence in the case, if you are not convinced of the guilt of the accused beyond a reasonable doubt, then, of course, you must find him not guilty, because you were told at the outset of the case, and it is still the law, that a defendant is presumed to be innocent of the charges made against him in the indictment. This presumption applies to each element of the offense or offenses charged. This presumption remains with the accused throughout the course of the trial, unless and until, after you have considered all of the evidence in the case, you are satisfied beyond a reasonable doubt that the defendant is guilty of the charge or charges. And if, after considering all of the evidence in the case and these instructions of the Court, you have in your mind, however, merely a suspicion or a mere probability appears to you, or you have a suspicion that the defendant may have committed the offense charged against him in the indictment, then, of course, you must return a verdict of not guilty.

It is the law that no verdict of guilty can stand on mere supposition, probabilities or suspicion. These matters alone do not warrant a conviction because they do not amount to proof beyond a reasonable doubt.

Also, ladies and gentlemen, it is a Constitutional right of a defendant in a criminal trial that he may not be compelled to testify, thus the decision as to whether he should or should not testify is left to the defendant, acting with the advice and assistance of his counsel. You must not draw any inference of guilt from the fact that he does not testify, nor should this fact be discussed by you in any fashion, nor should it enter into your deliberations in any way.

There is no obligation on the part of a defendant to prove his innocence, nor is there any obligation upon a defendant to call any witnesses or to produce any evidence. The

burden of proving the guilt of the accused rests always on the prosecution. That burden never shifts. And as I've told you, that burden is not sustained, unless and until the proof offered by the prosecution in the case proves or convinces you beyond a reasonable doubt of the guilt of the accused.

This term "reasonable doubt" which the Court has used several times already, has a definite meaning. As used in these instructions, a reasonable doubt means just what it says, a doubt based upon reason arising out of the evidence or lack of evidence in the case. It is such a doubt as after a full and a fair consideration of all the evidence in the case, leaves a juror's mind so undecided that he or she does not have an abiding conviction as to the guilt of the accused. To put this another way, a reasonable doubt is such a doubt as would cause a reasonably thoughtful and prudent person to hesitate to act if such a doubt related to some matter of importance concerning his or her own affairs. However, a doubt is not a reasonable doubt if it arises from mere conjecture or from speculation or whim, or from a reluctance to convict because of some feeling of sympathy or mercy. A reasonable doubt, ladies and gentlemen, is a conscientious belief arising only after a calm, a dispassionate and an impartial consideration of all the evidence in the case that there is a reason to doubt the defendant's guilt. And you'll note I said a calm, dispassionate and impartial consideration of the evidence in the case. Ladies and gentlemen, feelings such as sympathy or mercy or hatred or revenge have no place in your deliberations or in your consideration of the evidence involved in the case.

It is not necessary for the prosecution to prove the guilt of a defendant beyond all doubt. If that were the rule, few persons, however guilty they might be, would be convicted. It is rarely possible to prove anything to an absolute certainty; consequently, the law is such that in a criminal case, it is sufficient if the guilt of the accused be established beyond a reasonable doubt, not beyond all possible doubt.

not unfairly ambiguous or vague. Allsup was adequately informed of the nature of the charges against him. *Hamling v. United States,* 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974).

AFFIRMED.