99 F.3d 1147
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald S. ARNOLD, Defendant-Appellant.
 No. 95-30284.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 11, 1996.*
Decided Oct. 18, 1996.
 
 Before: BROWNING, D.W. NELSON, and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Ronald Arnold appeals his jury conviction of four counts of willfully selling cable television distrainable boxes intended to be used for the unauthorized interception of cable services in violation of 47 U.S.C. § 553(a). Arnold contends that the district court erred in allowing the peremptory strike of an African-American juror and in denying his motion to dismiss for vindictive prosecution. We have jurisdiction under 28 U.S.C. § 1291 and we affirm.
 
 I. Alleged Batson Error
 
 3
 The district court's findings regarding purposeful discrimination in the jury selection process are reviewed for clear error. United States v. Vasquez-Lopez, 22 F.3d 900, 901 (9th Cir.), cert. denied 115 S.Ct. 239 (1994). On review, we accord great deference to the district court's determination that peremptory challenges did not stem from discriminatory motives. Batson v. Kentucky, 476 U.S. 79, 98 n. 21 (1986); United States v. Chinchilla, 874 F.2d 695, 697-98 (9th Cir.1989).
 
 
 4
 Arnold, who is African American, argues that the prosecutor unconstitutionally exercised a peremptory challenge to excuse one of three prospective African-American jurors. When Arnold objected to the dismissal of Delores Lee, the prosecutor stated that she challenged the juror because the juror's demeanor made her "uneasy":
 
 
 5
 It's difficult to articulate, Your Honor. I just get an uneasy sense that has been nagging at me that Ms. Lee doesn't like me. For purposes of the Batson challenge I would note there are two other black jurors that I did not challenge....
 
 
 6
 And there were things she said about her current--it's an uneasy feeling I had based on facial expressions she made to me with eye contact that has nagged at me. CR 180.
 
 
 7
 Upon further questioning from the district court judge, the prosecutor explained:
 
 
 8
 It was just eye contact I had with her on more than one occasion. When I first had an eye contact in which--I believe it was after we were--we introduced ourself and the indictment was read I saw what I thought was a disgruntled--disgusted is probably too strong a word--look.
 
 
 9
 That made me uncomfortable. So I proceeded to attempt on numerous occasions to have eye contact to see if I felt it was repeated, either because of the--at me or for whatever reason, and I felt it was. It's just an uneasy feeling I have ... it was a prosecutor's gut reaction from picking a lot of juries. CR 184-85.
 
 
 10
 The prosecutor later added that she was concerned that Lee had a disabled child and might be biased because the defendant taught disabled children. She also felt that because Lee was unemployed, she might be less sympathetic to businesses. CR 191-92. The prosecutor insisted, however, that her reaction to Lee's expressions and body language was her primary reason for exercising a peremptory strike. The district court determined that the government had articulated a race-neutral reason for the strike and denied the Batson challenge. CR 194.
 
 
 11
 Batson established a three-part analysis to determine whether the exercise of peremptory challenges violates the Equal Protection Clause. If the defendant establishes a prima facie case of discrimination, the prosecutor must articulate a race-neutral explanation for the challenge. If so, the district court then determines whether the prosecutor's explanation is a pretext for racial discrimination. Batson, 476 U.S. at 96-98; United States v. Bishop, 959 F.2d 820, 824 (9th Cir.1992).
 
 
 12
 The district court did not rule on whether Arnold established a prima facie case of discrimination, but because the prosecutor offered a race-neutral explanation in response to Arnold's objection, the preliminary issue became moot. Hernandez v. New York, 500 U.S. 352, 359 (1991). In order to decide whether the government has carried its burden of producing race-neutral grounds for its peremptory challenge, this court has examined whether there is a "nexus between the jurors' characteristic ... and their possible approach to the specific trial." Bishop, 959 F.2d at 825. Although the explanation must be "clear and reasonably specific," Chinchilla, 874 F.2d at 698 (quoting Batson, 476 U.S. at 98 n. 20), the Supreme Court recently has clarified that at this second step of the Batson inquiry, the prosecutor's explanation need not be "persuasive, or even plausible." Purkett v. Elem, 115 S.Ct. 1769, 1771 (1995); see also Jones v. Gomez, 66 F.3d 199, 201 (9th Cir.1995), cert. denied, 116 S.Ct. 1437 (1996). The Court has also held that unless discriminatory intent is inherent in the government's explanation, the reason offered will be deemed race-neutral. Hernandez, 500 U.S. at 360. Accordingly, the prosecutor's explanation that the juror's demeanor suggested she would be hostile to the government's case satisfies the second prong of Batson.
 
 
 13
 We turn, therefore, to the third step of the Batson inquiry to determine whether Arnold carried the burden of establishing purposeful discrimination. Batson, 476 U.S. at 98; Johnson v. Vasquez, 3 F.3d 1327, 1329 (9th Cir.1993), cert. denied, 114 S.Ct. 1838 (1994). In Burks v. Borg, this court accepted that "[p]eremptory challenges are a legitimate means for counsel to act on ... hunches and suspicions." 27 F.3d 1424, 1429 n. 3 (9th Cir.1994), cert. denied, 115 S.Ct. 1122 (1995); see also J.E.B. v. Alabama ex. rel. T.B., 114 S.Ct. 1419, 1431 (1994) (O'Connor, J., concurring) ("[A] trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses.... That a trial lawyer's instinctive assessment of a juror's predisposition cannot meet the high standards of a challenge for cause does not mean that the lawyer's instinct is erroneous."). Although the prosecutor relied primarily on instinct to explain the peremptory challenge, we have held that such subjective factors can play a legitimate role in jury selection.[1] Burks, 27 F.3d at 1429; see also United States v. Childs, 5 F.3d 1328, 1337-38 (9th Cir.1993) (finding that the prosecutor's explanation that a juror appeared hesitant and was too easily led by the questions was race-neutral), cert. denied, 114 S.Ct. 1385 (1994); United States v. Lorenzo, 995 F.2d 1448, 1454 (9th Cir.) (accepting lack of attentiveness and unkempt appearance as racially neutral reasons), cert. denied, 510 U.S. 881 (1993); United States v. Daly, 974 F.2d 1215, 1219 (9th Cir.1992) (upholding a challenge to a juror who appeared to be a "loner"); United States v. Power, 881 F.2d 733, 740 (9th Cir.1989) ("The fact that a prosecutor's reasons may be 'founded on nothing more than a trial lawyer's instinct about a prospective juror' does not diminish the scope of acceptable invocation of peremptory challenges, so long as they are the actual reasons for the prosecutor's actions.") (quoting United States v. Thompson, 827 F.2d 1254, 1260 (9th Cir.1987)).
 
 
 14
 In Hernandez, the Supreme Court explained that the trial judge is in the best position to evaluate the demeanor and credibility of the prosecutor. 500 U.S. at 365 (stating that the trial court's findings on discriminatory intent warrant particular deference because they "largely will turn on evaluation of credibility") (quoting Batson, 476 U.S. at 98 n. 21). This court has also accorded "broad deference to district judges, who observe the voir dire first hand." Vasquez-Lopez, 22 F.3d at 902. In this case, the district judge determined that the prosecutor's explanation was acceptable under Batson. In announcing his decision, the judge noted both the prosecutor's credibility with the court and the prosecutor's decision to retain other African Americans on the jury. See Burks, 27 F.3d at 1429 (a prosecutor's willingness to accept minorities on the jury is a valid consideration in determining whether she violated Batson ); United States v. Omoruyi, 7 F.3d 880, 881 (9th Cir.1993) (noting that a prosecutor's decision not to use some peremptory challenges combined with a willingness to seat minority jurors cuts against a pattern of discrimination). Cf. Palmer v. Estelle, 985 F.2d 456, 458 (9th Cir.) (trial court may consider the prosecutor's acceptance of African-American jurors but may not rely solely on the fact that some African Americans remain on the jury when determining whether the prosecutor has intentionally discriminated), cert. denied, 509 U.S. 928 (1993).
 
 
 15
 We conclude that the prosecutor's explanation for striking Lee was not a pretext for racial discrimination, and we hold that the district court did not clearly err in rejecting Arnold's Batson challenge.
 
 II. Vindictive Prosecution Claim
 
 16
 The standard of review for claims of vindictive prosecution remains unsettled in this circuit. United States v. Montoya, 45 F.3d 1286, 1291 (9th Cir.), cert. denied, 116 S.Ct. 67 (1995). The Ninth Circuit has variously applied abuse of discretion, clearly erroneous, and de novo standards. Montoya, 45 F.3d at 1291; United States v. Gann, 732 F.2d 714, 724 (9th Cir.), cert. denied, 469 U.S. 1034 (1984). Under any standard, however, Arnold's claim is without merit.
 
 
 17
 Arnold was indicted on October 24, 1994, on four counts of violating 47 U.S.C. § 553(a). The indictment charged that Arnold "knowingly" assisted in the unauthorized interception and receipt of cable communications. On February 10, 1995, five days before trial was scheduled to begin, the government moved to dismiss the indictment without prejudice on the grounds that the indictment set forth a mens rea element of "knowingly" while the statutory mens rea element is "willfully." CR 52. On March 2, 1995, a new prosecutor filed a superseding indictment charging Arnold with "willfully and for purposes of commercial advantage or private financial gain" assisting in the unauthorized interception and receipt of cable communications. CR 61.
 
 
 18
 Arnold claims that the superseding indictment increased the severity of the charges in response to his insistence on a trial after lengthy plea negotiations. The Supreme Court has held that the Due Process Clause bars the prosecution of more serious charges or the imposition of a harsher sentence against a defendant merely because the defendant has exercised a procedural right. Blackledge v. Perry, 417 U.S. 21, 28-29 (1974); North Carolina v. Pearce, 395 U.S. 711, 723-24 (1969). Such due process concerns arise if the circumstances present a "realistic likelihood of 'vindictiveness.' " Blackledge, 417 U.S. at 27.
 
 
 19
 The doctrine of vindictive prosecution applies only where there has been an increase in the severity of the charges. United States v. Kinsey, 994 F.2d 699, 701 (9th Cir.1993). Although 47 U.S.C. § 553 does not provide any offense classifications, the penalty provisions in subsection (b) impose felony penalties only for violations "for purposes of commercial advantage or private financial gain." The government argues that the superseding indictment does not impose more serious charges against Arnold because the government made clear its intent to pursue felony charges throughout the proceedings leading up to the indictment. We need not decide whether the prosecution has increased the severity of the charges against Arnold. Even if the superseding indictment does comprehend increased punishment, Arnold has failed either to show evidence of actual vindictiveness or to point to circumstances that give rise to a presumption of vindictiveness.
 
 
 20
 To demonstrate vindictive prosecution, a defendant must either cite direct evidence of a vindictive motive or establish a presumption of vindictiveness. United States v. Goodwin, 457 U.S. 368, 380-81 (1982); United States v. Sinigaglio, 942 F.2d 581, 584 (9th Cir.1991). A showing of actual vindictiveness requires "direct evidence of an expressed hostility or threat to the defendant for having exercised a constitutional right." United States v. Gallegos-Curiel, 681 F.2d 1164, 1168 (9th Cir.1982). The appearance of vindictiveness may result from behavior pointing to a realistic or reasonable likelihood of prosecutorial conduct prompted by hostility or a punitive animus towards the defendant because the defendant exercised a legal right. Id. at 1169. Arnold has shown no actual evidence of vindictiveness, but he argues that the government's decision to seek the superseding indictment after plea negotiations failed, combined with the prosecutor's failure to inform the magistrate judge of the differences between the first and second indictments, should give rise to a presumption of vindictiveness.
 
 
 21
 The Supreme Court has clarified that a presumption of vindictiveness does not arise from the "give-and-take" of the plea bargaining process. United States v. Bordenkircher, 434 U.S. 357, 362 (1978). Before trial, a prosecutor may threaten increased charges and may carry out that threat. United States v. Noushfar, 78 F.3d 1442, 1446 (9th Cir.1996). Even if the government had increased the charges against Arnold because the expectation that he would plea bargain proved unfounded, such pretrial additions to charges are a proper exercise of prosecutorial discretion. United States v. Goodwin, 457 U.S. 368, 380 n. 11 (1982) ("A charging decision does not levy an improper 'penalty' unless it results solely from the defendant's exercise of a protected legal right, rather than the prosecutor's normal assessment of the societal interest in prosecution."). Before trial, "the prosecutor's assessment of the proper extent of prosecution may not have crystallized." Id. at 381. This circuit has held that "[b]ringing additional charges because a defendant is not willing to plea bargain constitutes permissible prosecutorial discretion." United States v. Stewart, 770 F.2d 825, 829 (9th Cir.1985), cert. denied, 474 U.S. 1103 (1986), and we have also stated that "electing not to bring [some charges] initially and utilizing them as a latent bargaining tool" is constitutionally permissible. United States v. Allsup, 573 F.2d 1141, 1143 (9th Cir.), cert. denied, 436 U.S. 961 (1978); see also United States v. Garza-Juarez, 992 F.2d 896, 906-07 (9th Cir.1993) (holding that it is not prosecutorial vindictiveness under Bordenkircher for the prosecution to bring more serious charges if the defendant decides not to plead guilty), cert. denied, 510 U.S. 1058 (1994).
 
 
 22
 Accordingly, we find that Arnold has failed to demonstrate either actual or presumptive vindictiveness, and we hold that the district court properly denied Arnold's motion to dismiss for vindictive prosecution.
 
 
 23
 AFFIRMED.
 
 
 
 *
 The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We also note that "reliance on such factors alone cannot overcome strong objective indicia of discrimination." Burks, 27 F.3d at 1429. We do not, however, find such objective indicia of discrimination in this case